**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JERRY MERRIAM,<br><br>     Plaintiff,<br><br> vs.<br><br>FIRST ADVANTAGE BACKGROUND<br>SERVICES CORP.<br><br>     Defendant. | Civil Action No.: 1:23-cv-00836<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Jerry Merriam ("Plaintiff" or "Mr. Jerry") by and through his counsel brings the following Complaint against First Advantage Background Services Corp. ("Defendant" or "FADV") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as having a recent conviction.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant incorrectly reported to Plaintiff's prospective employer Plaintiff's misdemeanor conviction from 2002 as being a recent one, from 2022. Defendant's reporting is grossly inaccurate and untrue.

4.      Plaintiff has not been convicted of a felony ever, and has not been convicted of any crime since a single misdemeanor more than twenty years ago.

5.      Plaintiff's prospective employer rescinded Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate misdemeanor conviction.

6.      Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from St. Joseph County, Michigan regarding the misdemeanor at issue prior to publishing Plaintiff's report to his prospective employer.

7.      Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff's misdemeanor was dated October 15, **2002**, not October 15, **2022**, a twenty-year difference.

8.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.      Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.      Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.      As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort

disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13.     Jerry Mirriam ("Plaintiff" or "Mr. Merriam") is a natural person residing in Sturgis, Michigan, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.     Defendant First Advantage Background Services Corp. ("Defendant" or "FADV") maintains its headquarters at 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328 doing business throughout the United States, including the State of Michigan and in this District, and can be served with process by way of its registered agent Corporation Services Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Ga 30092.

15.     Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

17.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**STATUTORY BACKGROUND**

19.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33.     Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf  ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

36.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor conviction from 2002 as a misdemeanor conviction from 2022.

39.     As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with PepsiCo

40.     On or about late May 2023, Plaintiff applied for full-time employment as a CDL A Delivery Driver with PepsiCo Beverages North America ("PepsiCo").

41.     On or about June 5, 2023, upon applying to PepsiCo, Plaintiff successfully completed an interview and passed a drug test.

42.     On or about June 9, 2023, PepsiCo extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

### Defendant Published an Inaccurate Background Check Report to PepsiCo

43.     PepsiCo contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

44.     On or about June 12, 2023, PepsiCo ordered a criminal background check on Plaintiff from Defendant.

45.     On or about June 14, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to PepsiCo.

46.     Within that employment report, Defendant published inaccurate information about Plaintiff.

47.     Specifically, Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing (for its recency) 2022 misdemeanor conviction from St. Joseph County, Michigan, which appeared in the employment report as follows:



48.     The misdemeanor conviction reported by Defendant about Plaintiff is inaccurate.

49.     Plaintiff has never been convicted of any crime since 2003.

50.     Plaintiff's conviction for misdemeanor from 2002 was the only crime for which Plaintiff was convicted in his life.

51.     A cursory review of the widely available underlying public court records confirms that Plaintiff never pled guilty to or was convicted of any crime since 2003. Rather, the public record confirms that Plaintiff was only once ever convicted of any crime in his life, a misdemeanor, twenty years ago.

52.     Defendant's search period for statewide criminal records was set to find criminal records between 05/29/2016 and 05/26/2023.

53.     The sole reason the inaccurate case date and disposition date were reported as being from 2022 was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

54.     Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of any crime since 2003 and that it should not have reported the same.

55.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**PepsiCo Denies Plaintiff's Job Application**

56.     On or about June 15, 2023, Plaintiff received first Pre-adverse action letter from PepsiCo with a copy of plaintiff's background check report enclosed.

57.     On or about July 2, 2023, Plaintiff received a second Pre-adverse action letter from PepsiCo with a copy of Plaintiff's background check report enclosed, where PepsiCo notified Plaintiff that they had withdrawn his conditional offer of employment.

58.     On or about July 6, 2023, Plaintiff was notified by PepsiCo that his employment application was rescinded.

59.     Shortly thereafter, trying to figure out why PepsiCo rescinded its job offer to him, Plaintiff called PepsiCo's recruiter he was working with. The recruiter did not know the reason for the denial.

60.     After several calls to other individuals from PepsiCo, Plaintiff learned that the reason for the denial was the results of the background check report on him prepared by Defendant.

61.     Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the misdemeanor conviction from 2022 contained within the subject employment report.

62.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he had a recent conviction, in relation to the PepsiCo position, but also the impact of the same on his future.

63.     Specifically, Defendant reported Plaintiff's misdemeanor conviction from 2002 with disposition date and case date from 2022. It is clearly labeled in the underlying court records that Plaintiff was found guilty on October 15, 2002. The underlying court records were available to Defendant prior to publishing Plaintiff's employment report to PepsiCo, but Defendant failed to obtain or perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

64.     On or about July 10, 2023, desperate to secure employment with PepsiCo and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

65.     Plaintiff identified himself and provided information to Defendant to support his dispute.

66.     Plaintiff specifically disputed the inaccurate reporting of his criminal record.

67.     Plaintiff specifically asked Defendant to investigate and correct its reporting in any employment report about Plaintiff.

68.     On July 19, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and conceding its inaccurate reporting by correcting the report and not showing any criminal records within the consumer report.

69.     Defendant also communicated to Plaintiff that it had issued a corrected employment report to PepsiCo.

70.     Plaintiff continued to follow up with PepsiCo and hopes that the job offer would be reinstated, however, PepsiCo did not renew its job offer to Plaintiff.

71.     Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, PepsiCo formed a negative opinion about Plaintiff and/or moved on to other candidates.

72.     Defendant's false report cost Plaintiff a promising, well-paying job with PepsiCo.

73.     Plaintiff had obtained a Commercial Driver License to work in the logistic field as a truck driver. Moreover, the position with PepsiCo was full-time and Plaintiff was set to earn $29.25 per hour with a competitive benefits package. More importantly, Plaintiff was excited to work as a Delivery Driver because he was qualified to successfully perform the work and was passionate about the field.

74.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

75.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep;

lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

76.     Specifically, Defendant's inaccurate report has caused him to lose the PepsiCo job, has caused marital strife with his wife, has led to financial difficulties, and has caused him anxiety, insomnia, and loss of appetite.  Defendant has been further damaged by having to borrow money on disadvantageous terms to help cover the family's bills as a result of Defendant's actions.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

77.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

78.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

79.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

80.     At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

81.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

82.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort

disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

83.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

DATED: August 8, 2023

*/s/ Beth Findsen*
Beth Findsen, Bar No. 023205
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
E: bfindsen@consumerattorneys.com
Telephone: (602) 807-6676
*Attorney for Plaintiff* Jerry Merriam